## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARY PUSTELAK and LINDA CARLE, individually and on behalf of all others similarly situated, | CASE NO. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| COMERICA BANK, | |
| Defendant. | |

Plaintiffs Mary Pustelak and Linda Carle, individually and on behalf of all others similarly situated, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations pertaining specifically to themselves or their counsel, which are based on personal knowledge. Plaintiffs believe that substantial evidentiary support will exist for the facts alleged in this complaint, after a reasonable period of discovery.

### NATURE OF THE CASE

1.      Plaintiffs bring this Class Action Complaint against Defendant Comerica Bank for unlawfully retaining the interest and other investment income it generated from the federal benefits funds held at its bank by Plaintiffs and putative Class members – earnings that rightfully belong to Plaintiffs and Class members.

2.      Plaintiffs and the putative Class members are participants in the Direct Express Debit Mastercard ("Direct Express") program administered by Defendant. The program allows recipients of federal benefits—including but not limited to older Americans receiving Social Security benefits, disabled Americans receiving Social Security disability insurance payments, coal workers eligible for federal benefits related to black lung disease, and veterans receiving veterans' benefits, many of whom are unbanked—to receive and spend their benefits funds via debit card accounts.

3.      Since 2008, Comerica has served as the exclusive administrator for the Direct Express program pursuant to a contract between the Department of the Treasury's Bureau of Fiscal Service ("BFS") and Comerica. Thus, from 2008 through the present, all of the federal benefit payments made to all of the millions of federal benefits recipients enrolled in the Direct Express program (the "Beneficiaries") – approximately 3.4 million persons at the end of 2024 – have been deposited by the government at Comerica's bank and managed and held by Comerica on behalf of all of these people.

4.      As the administrator of the Direct Express program, Comerica receives approximately $3 billion in federal benefits funds each year from the government. Before the Beneficiaries withdraw or spend their federal benefits funds using their

Comerica-issued debit cards, Defendant earns substantial interest and/or other investment income on the funds.

5.     According to the standardized contract that uniformly governs the relationship between Defendant and all of the Beneficiaries enrolled in the Direct Express program, all of the federal benefits funds deposited by the government at Comerica's bank belong to the Direct Express program-enrolled Beneficiaries, with Michigan law governing the relationship between Comerica and the Beneficiaries.[1] Notably, Michigan law explicitly provides that any interest or other investment income generated from the principal balance of funds held at a bank belongs to the owner of those funds.

6.     The Beneficiaries, as the owners of the Direct Express funds held by Comerica, thus rightfully own all of the interest and other earnings generated from the principal balances of those funds. Nevertheless, between 2008 and the present, Comerica has never distributed any of the interest or other earnings generated from the Direct Express funds held at its bank to Plaintiffs or any other Beneficiary. Instead, Comerica has kept all of the interest and other earnings generated from the Beneficiaries' federal benefits funds for itself – maximizing its corporate profits at the expense of some of the most vulnerable members of our society. Plaintiffs

---

[1]     Comerica Direct Express Terms of Use, available at https://www.comerica.com/content/dam/comerica/en/directexpress/Terms_And_C onditions.pdf (last visited March 3, 2025).

estimate that the interest and other earnings wrongfully retained by Comerica exceed $100 million per year.

7.     By retaining the interest and other investment earnings generated from Beneficiaries' federal benefits funds, all of which rightfully belong to the Beneficiaries, Comerica breached its contract with (and fiduciary duty owed to) Plaintiffs and members of the putative Class, converted their property, and unjustly enriched itself, all in violation of Michigan common law and MCL § 600.2919a. To redress Defendant's unlawful conduct, Plaintiffs seek damages as provided by Michigan law, disgorgement of Defendant's ill-begotten gains, and attorneys' fees and costs.

## PARTIES

### I.     Plaintiffs

8.     Plaintiff Mary Pustelak is a citizen and resident of Michigan. She was enrolled in the Direct Express program from 2013 until October 2024. As an enrollee of the Direct Express program, she was issued a Direct Express debit card by Comerica, has regularly received federal benefits deposited by the government at Comerica's bank, and has used her Direct Express debit card to spend and withdraw her federal benefits funds.

9.     Plaintiff Linda Carle is a citizen and resident of Michigan. She has been enrolled in the Direct Express program since 2016. As an enrollee of the Direct

Express program, she was issued a Direct Express debit card by Comerica, has regularly received federal benefits deposited by the government at Comerica's bank, and has used her Direct Express debit card to spend and withdraw her federal benefits funds.

## II.    Defendant Comerica

10.    Defendant is a financial services company headquartered in Dallas, Texas. Defendant is a subsidiary of Comerica Incorporated, once of the largest financial institutions in the country.

## JURISDICTION AND VENUE

11.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.    Personal jurisdiction and venue are proper because Comerica's Terms of Use, which governs the relationship between Plaintiffs (and all Class members) and Defendant, expressly provides that all federal benefits funds held by Comerica on behalf of Beneficiaries (including Plaintiffs and Class members) "are deemed held in the State of Michigan," and that the terms are "governed by and interpreted in accordance with the laws of the State of Michigan."[2]

---

[2]    *Id.*

## APPLICABLE MICHIGAN LAW

13.     Under Michigan common law, interest earned on a principal fund is the property of the party owning the fund. *Star-Batt, Inc. v. City of Rochester Hills*, 650 N.W.2d 422, 426 (Mich. App. 2002) ("Interest earned on a principal fund is the property of the party owning the fund.")). This rule applies when a party acts as a custodian of private funds under state or local law. *Id.*

14.     Michigan common law also distinguishes between two types of deposits: general and special. *Owosso Masonic Temple Ass'n v. State Sav. Bank*, 263 N.W. 771, 774 (Mich. 1935). A general deposit creates the relation of debtor and creditor between the bank and the depositor, and may be repaid on demand, in whole or in part, in current money. *Id.* It consists of money which is mingled with the money of other depositors in a general fund chargeable with the payment of general deposits, possesses no trust quality, and loses its special identity in its general commingling with the funds of the bank. *Id.* On the other hand, a special deposit of money is a deposit for safe-keeping. *Id.* It is a deposit made for a special purpose and with the understanding it is to be set aside solely for that purpose and not mingled with the other funds of the bank. *Union Guardian Tr. Co. v. Emery*, 290 N.W. 841, 849-50 (Mich. 1940) (citing *Reichert v. Am. State Sav. Bank*, 249 N.W. 876 (Mich. 1933). It contemplates the return of the identical money deposited. *Owosso Masonic Temple*, 263 N.W. at 774. The bank has no right to handle or use

the money constituting a special deposit. *Id*. No relation of debtor and creditor exists between the depositor and the bank. The title of the money constituting a special deposit does not pass to the bank. *Id.* The title to the money constituting a general deposit does pass to the bank. *Id.*

15.     Special deposits create a trust between the owner and the bank, and a bank accepting a special deposit has a fiduciary duty to the owner of the funds. *Reichert*, 249 N.W. at 877; *see also Masi v. Ford City Bank & Tr. Co.*, 779 F.2d 397, 401 (7th Cir. 1985).

## FACTUAL BACKGROUND

### I.     The Direct Express Prepaid Debit Card Program

16.     In 2007, the BFS established the Direct Express program. Through this program, recipients of certain benefits—federal and state-disbursed Social Security and supplemental security income (SSI) for adults and children with disabilities, veterans' pension and education assistance, civil service retirement, and compensation for coal workers with black lung disease, among others—can receive their benefits on a prepaid debit card.

17.     Since 2013, with limited exceptions, non-veteran federal beneficiaries have had only two options for how to receive their benefit payments: through a Direct Express card or direct deposit to a bank account.

18.     Since January 2008, BFS has had an exclusive contract with Defendant Comerica to administer the Direct Express program by providing the prepaid Direct Express card and associated account services to enrollees in the program. Comerica has been responsible for maintaining accounts for cardholders and managing the deposit of benefit payments into these accounts. In exchange, BFS pays Comerica a fee for every Beneficiary who enrolls in the Direct Express program.

19.     To enroll in the Direct Express program and receive a Direct Express debit card from Comerica, Beneficiaries must agree to Comerica's Terms of Use, which govern the relationship between Comerica and the Beneficiary. These terms unequivocally state that the Beneficiaries are the owners of the funds deposited into their card account at Comerica. Indeed, the terms state, "You are the owner of the funds in the Card Account."[3] The terms also specify that the funds "are deemed held in the State of Michigan" and that the terms are "governed by and interpreted in accordance with the laws of the State of Michigan."[4]

20.     Once enrolled, Beneficiaries receive their monthly benefits in their debit card accounts at Comerica and can use that debit card for regular purchases or ATM withdrawals.

---

[3]     *Id*.
[4]     *Id*.

21.   These funds are special deposits and, once deposited, belong to the Beneficiary account holder, as per the Terms of Use and Michigan law. Comerica acts as a mere custodian and safe-keeper. These funds are held by Comerica exclusively for a special purpose—for distributing federal benefits to the Beneficiaries. Comerica is tasked with passing the identical money deposited by the government to the Beneficiaries. Comerica does not mingle the Direct Express funds with the money of other depositors in a general fund chargeable with the payment of general deposits. Instead, Comerica created unique routing numbers and Bank Identification Numbers ("BIN")[5] for the Direct Express program, indicating the funds will be segregated from its general deposits.

## II.   Comerica unlawfully retains the earnings from the Direct Express funds

22.   Comerica receives approximately $3 billion in Direct Express funds per year from the government, and holds these funds at its bank for the benefit of the Beneficiaries.

23.   Between the time it receives the Direct Express funds and the time Beneficiaries use or withdraw the funds, Comerica uses the funds to earn interest

---

[5]   "Bank Identification Number" refers to the first four to six numbers on a payment card. This set of numbers identifies the financial institution that issues the card.

and other investment income. Comerica then retains those earnings, estimated to be over $100 million per year, for its own use and gain.

24.     However, Michigan law—the law governing the relationship between Defendant and the Beneficiaries—clearly provides that the earnings from the Direct Express funds belong to the Beneficiaries, not Defendant. Indeed, under Michigan law, interest on a principal fund belongs to the owner of the fund. *Star-Batt, Inc.*, 650 N.W.2d at 428, 426 (holding "[W]e apply the common law rule that 'interest follows principal'" and that "Interest earned on a principal fund is the property of the party owning the fund.")).

25.     By unlawfully retaining the funds, despite its promise to the Beneficiaries that they own the funds and that Michigan law governs the terms of the relationship between them and Comerica, Comerica breached the standardized contract it uniformly imposed upon the Beneficiaries when they enrolled in the Direct Express program, breached its fiduciary duty, unjustly enriched itself, and unlawfully converted the interest and other earnings generated from the Beneficiaries' funds.

## CLASS ACTION ALLEGATIONS

26.     Plaintiffs seek to represent a class (the "Class") defined as:

> All persons in the United States who, during the six years preceding the filing of this action or during the pendency of this case prior to the date of class certification, received federal

benefits funds from the government that were held by Comerica pursuant to the Direct Express program.

27.    The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

28.    This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

29.    **Numerosity**: The number of persons within the Class is substantial, believed to amount to millions of people. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this

litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

30. **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a) Whether the funds in the Direct Express accounts are owned by the Beneficiaries or Defendant;

(b) Whether the funds in the Direct Express accounts are general or special deposits under Michigan law;

(c) Whether Defendant made and retained interest and other investment income from the Direct Express funds;

(d) Whether Defendant breached its contract with the Beneficiaries by retaining all earnings from the Direct Express funds;

(e) Whether Defendant breached a fiduciary duty to the Beneficiaries by retaining all earnings from the Direct Express funds;

(f) Whether Defendant unjustly enriched itself by retaining all of the earnings from the Direct Express funds;

(g) Whether Defendant's retention of all earnings from the Direct Express funds constitutes conversion under MCL 600.2919a or Michigan common law; and

(h) Whether Plaintiffs and the Class are entitled to relief.

12

31.   **Adequate Representation**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

32.   **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to

13

some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Given that individual refunds for most Class members may be too small for each account holder individually to pursue, class-wide relief is essential to make Plaintiffs and the putative Class members whole.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

33.     Plaintiffs fully incorporate all paragraphs above.

34.     During their enrollment in the Direct Express program, Plaintiffs and Class members each agreed to be bound by Defendant's Terms of Use – a standardized, uniform contract that governs the relationship between Defendant and all of the Beneficiaries enrolled in the Direct Express program administered by Comerica.

35.     The Terms of Use expressly provide that Beneficiaries (including Plaintiffs and all Class members) own the funds in their Direct Express accounts and that Michigan law governs the terms of their relationship with Comerica. *See* Comerica Direct Express Terms of Use (stating, "You are the owner of the funds in the Card Account" and "Unless a federal law or regulation applies to a specific

section of these Terms or use of the Card, these Terms will be governed by and interpreted in accordance with the laws of the State of Michigan").[6]

36.    Further, because the Direct Express funds deposited by the government at Comerica's bank were made for safe-keeping, the funds were being held by Comerica exclusively for the special purpose of distributing federal benefits to Beneficiaries, the funds were segregated from Defendant's other deposits, and Defendant was tasked with passing the identical money deposited to the Beneficiaries, all Direct Express funds held at Comerica's bank for Beneficiaries are "special deposits" within the meaning of Michigan law. *Owosso Masonic Temple*, 263 N.W. at 774; *Union Guardian Tr. Co.*, 290 N.W. at 849-50. Because the Direct Express funds held at Comerica's bank for Beneficiaries are "special deposits" under Michigan law, all such funds belong to the Beneficiaries, not Comerica or anyone else. *Id.*

37.    Michigan law further provides that "interest follows principal," and "interest earned on a principal fund is the property of the party owning the fund." *Star-Batt, Inc.*, 650 N.W.2d at 428, 426. Therefore, the interest earned on the principal of Beneficiaries' funds belongs to the Beneficiaries, as the owners of the funds.

---

[6]    *Supra* at note 1.

38.     By retaining all interest and other earnings generated on Plaintiffs' and the Class members' Direct Express funds, Defendant breached its agreement with Plaintiffs and Class members (as set forth in the Terms of Use) that all federal benefits funds held by Comerica pursuant to the Direct Express program belong to Beneficiaries and that Comerica's administration of such funds shall be governed by Michigan law – which expressly provides that all interest or other earnings generated from the principal of such funds belong to the Beneficiaries.

39.     Plaintiffs and Class members have performed all of the obligations imposed on them under the Terms of Use.

40.     Plaintiffs and the Class members have been injured and suffered damages as a result of Defendant's breach of contract, including loss of the interest and other earnings made on their own funds.

41.     On behalf of themselves and the putative Class members, Plaintiffs seek compensatory damages along with reasonable attorneys' fees and costs and other litigation expenses.

## CAUSE OF ACTION II
### Breach of Fiduciary Duty
### (On behalf of Plaintiffs and the Class)

42.     Plaintiffs fully incorporate all paragraphs above.

43.     The Direct Express deposits are special deposits under Michigan law, not general deposits. The deposits were made to Defendant for safe-keeping, they

16

were exclusively for a special purpose—distributing federal benefits to the Enrollees, the funds were segregated from Defendant's other deposits, and Defendant was tasked with passing the identical money deposited to the Beneficiaries. Further, as per the Terms of Use, Defendant did not own the funds as with an ordinary deposit, but the funds belonged to the Beneficiaries upon deposit.

44.    Special deposits create a trust between the owner and the bank, and a bank accepting a special deposit has a fiduciary duty to the owner of the funds.

45.    Consequently, Defendant had a fiduciary duty to Plaintiffs and the Class members to act for their benefit upon matters within the scope of their relationship, in particular, to remit the earnings on the Direct Express funds to Plaintiffs and the Class members and not retain them for its own benefit.

46.    Defendant breached that fiduciary duty when it retained the earnings on Plaintiffs' and Class members' Direct Express funds, earnings that rightfully belonged to Plaintiffs and the Class members.

47.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiffs and Class members have suffered injury and damages, including loss of the earnings from their own funds.

**CAUSE OF ACTION III**
**Common Law Conversion**
**(In the Alternative to Count I)**
**(On Behalf of Plaintiffs and the Class)**

48.    Plaintiffs fully incorporate all paragraphs above.

49.    Under Michigan common law, conversion occurs when a person wrongfully exerts an act of dominion over another's personal property in denial of or inconsistent with his rights therein.

50.    At all relevant times, Plaintiffs and the Class members were owners of the Direct Express funds in their accounts. Under Michigan common law, the earnings from those funds were the property of Plaintiffs and the Class members.

51.     However, Defendant used the Direct Express funds to earn interest and other investment earnings without Plaintiffs' and the Class members' consent to the creation of a debtor-creditor relationship. Defendant then retained the earnings from those funds, which were the property of Plaintiffs and the Class members, without Plaintiffs' and the Class members' consent. In doing so, Defendant wrongfully exerted dominion over the earnings in denial of and inconsistent with the rights of Plaintiffs and the Class members.

52.    Defendant did so knowingly and without regard to the rights of the Plaintiffs and the Class members.

53.    Defendant had an obligation to return the specific money entrusted to its care to Plaintiffs and the Class members. It was obligated to honor Plaintiffs' and

the Class members' transactions and withdrawals using their debit cards and comply with Michigan law which dictates that the earnings on the Direct Express funds belong to the Beneficiaries.

54.    Plaintiffs and the Class members have suffered injury and damages as a direct and proximate cause of Defendant's unlawful conversion.

### CAUSE OF ACTION IV
### Statutory Conversion
### MCL 600.2919a
### (In the Alternative to Count I)
### (On Behalf of Plaintiffs and the Class)

55.    Plaintiffs fully incorporate all paragraphs above.

56.    MCL 600.2919a provides that "[a] person damaged as a result of . . . [a]nother person's stealing or embezzling property or converting property to the other person's own use" is liable for treble damages.

57.    Under Michigan common law, conversion occurs when a person wrongfully exerts an act of dominion over another's personal property in denial of or inconsistent with his rights therein.

58.    At all relevant times, Plaintiffs and the Class members were owners of the Direct Express funds in their accounts. Under Michigan common law, the earnings from those funds were the property of Plaintiffs and the Class members.

59.    However, Defendant used the Direct Express funds to earn interest and other investment earnings without Plaintiffs' and the Class members' consent to the

creation of a debtor-creditor relationship. Defendant then retained the earnings from those funds, which were the property of Plaintiffs and the Class members, for its own use, without Plaintiffs' and the Class members' consent. In doing so, Defendant wrongfully exerted dominion over the earnings in denial of and inconsistent with the rights of Plaintiffs and the Class members.

60.     Defendant did so knowingly and without regard to the rights of the Plaintiffs and the Class members.

61.     Defendant had an obligation to return the specific money entrusted to its care to Plaintiffs and the Class members. It was obligated to honor Plaintiffs' and the Class members' transactions and withdrawals using their debit cards and comply with Michigan law which dictates that the earnings on the Direct Express funds belong to the Beneficiaries.

62.     Defendant wrongfully retained and exerted dominion over the earnings for its own use in denial of and inconsistent with the rights of Plaintiffs and the Class members. In doing so, Defendant converted Plaintiffs' and Class members' property for its own use, in violation of MCL 600.2919a(1)(a).

**CAUSE OF ACTION V**
**Unjust Enrichment**
**(In the Alternative to Count I)**
**(On Behalf of Plaintiffs and the Class)**

63.     Plaintiffs fully incorporate all paragraphs above.

64.     Plaintiffs and the Class members conferred a monetary benefit to Defendant by providing it with their Direct Express funds to earn interest and other investment earnings, which Defendant knowingly used or retained for its own use in the course of its business.

65.     Defendant benefited from receiving Plaintiffs' and the Class members' Direct Express funds to earn interest and other investment earnings by their ability to retain and use that information for their own financial business benefit, and Defendant understood this benefit and accepted the benefit knowingly.

66.     Defendant had an obligation to return the property of Plaintiffs' and Class Members entrusted to its care and to comply with Michigan law which dictates that the earnings on the Direct Express funds belong to the Beneficiaries.

67.     In doing so, Defendant wrongfully exerted dominion over the earnings in denial of and inconsistent with the rights of Plaintiffs and the Class members.

68.     Plaintiffs and the Class members have suffered injuries and damages as a direct and proximate result of Defendants' improper retention of funds rightfully belonging to Plaintiffs and the Class Members.

69.     As a result of Defendant's wrongful conduct, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class members. Defendant continues to benefit and profit from its retention and use of the

interest and investment earnings derived from Plaintiffs' and the Class members' Direct Express funds, which rightfully belongs to Plaintiffs and the Class members.

70.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the wrongful conduct alleged in this Complaint.

71.    Plaintiffs and the Class members have no adequate remedy at law.

72.    Defendant acquired a monetary benefit by inequitable means.

73.    Under principals of equity and good conscience, Defendant should not be permitted to retain the benefits obtained from Plaintiffs and Class members since Plaintiffs and the Class members are owners of the Direct Express funds in their accounts, and, under Michigan common law, the earnings from those funds were the property of Plaintiffs and the Class members.

74.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class members have suffered and will continue to suffer injury and/or harm. Defendant should be compelled to disgorge into a common fund, for the benefit of Plaintiffs and the Class members, the proceeds that it unjustly received.

## CAUSE OF ACTION VI
### Violation of the Michigan Consumer Protection Act
### MCL 445.903, *et seq.*
### (On Behalf of Plaintiffs and the Class)

75.    Plaintiffs fully incorporate all paragraphs above.

76.    Plaintiffs and the Class members were "person[s]" within the meaning of MCL 445.902(1)(d).

77.    At all relevant times hereto, Defendant was a "person" engaged in "trade or commerce" within the meaning of MCL 445.902(1)(d) and (g).

78.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" MCL 445.903(1). Defendant engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction"; " (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it"; "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MCL 445.903(1). By retaining the earnings on Plaintiffs' and the Class members' funds, Defendant participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

79.    At all relevant times, Plaintiffs and the Class members were owners of the Direct Express funds in their accounts. Under Michigan common law, the earnings from those funds were the property of Plaintiffs and the Class members.

80.    However, Defendant used the Direct Express funds to earn interest and other investment earnings for its own use, without Plaintiffs' and the Class members' consent. In doing so, Defendant wrongfully exerted dominion over the earnings in denial of and inconsistent with the rights of Plaintiffs and the Class members.

81.    Defendant did so knowingly and without regard to the rights of the Plaintiffs and the Class members.

82.    Defendant had an obligation to return the specific money entrusted to its care, and the resulting earnings derived therefrom, to Plaintiffs and the Class members.

83.    In the course of its business, Defendant failed to disclose and actively concealed that it retained and exerted dominion over the earnings for its own use in denial of and inconsistent with the rights of Plaintiffs and the Class members.

84.    In doing so, Defendant engaged in activities with a tendency or capacity to deceive.

85.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with the intent that Plaintiffs and the

Class members would rely upon such concealment, suppression or omission, in connection with its wrongful retention of interest and other investment earnings derive from Defendant's use of the Direct Express funds.

86.    Defendant is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Michigan CPA.

87.    As alleged above, Defendant knew that it improperly retained the earnings from the Direct Express funds, and Plaintiffs and the Class were deceived by Defendant's omissions into believing that these funds did not properly belong to Plaintiffs and the Class members, or lacking awareness as to the existence of these earnings. The true information could not have reasonably been known by the consumer.

88.    Defendant knew or should have known that their conduct violated the Michigan CPA.

89.    Defendant deliberately withheld the information about the proper ownership of Direct Express fund earnings.

90.    From the inception of the Direct Express funds program, Defendant has known of the rights of beneficiaries with respect to the earning derived from the Direct Express funds. But, to protect its profits, it retained all of these earnings and concealed the nature of the ownership of the earnings.

91.    Defendant owed Plaintiffs and the Class members a duty, based on their respective knowledge, to disclose the nature of the ownership of the earnings derived from the Direct Express funds, because Defendant, at all relevant times, deceptively withheld any information from Plaintiffs and the Class members related to these earnings.

92.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiffs and the Class members, who had limited or no visibility into the nature of the earnings from the Direct Express funds.

93.    Defendants intentionally and knowingly misrepresented material facts regarding earnings from the Direct Express funds with an intent to mislead Plaintiffs and the Class Members.

94.    Had Plaintiffs and the Class Members known that their Direct Express funds were being systematically used to generate interest and investment earnings, they would have sought to vindicate their rights and secure these earnings at an earlier date. Individuals beyond the statute of limitations period, for example, may never be able to recover these improperly-retained funds.

95.    Plaintiffs and the Class members suffered ascertainable loss caused by Defendant's failure to disclose material information, by failing to receive funds that properly belonged to them.

96.    Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

97.    As a direct and proximate result of Defendant's violations of the Michigan CPA, Plaintiffs and the Class members have suffered injury-in-fact and/or actual damage.

98.    Plaintiffs and the Class members seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Michigan Class Member; reasonable attorneys' fees; declaratory relief in the nature of a judicial determination of whether each Company's conduct violated the Michigan Statute, the just total amount of penalties to be assessed against each thereunder, and the formula and procedure for fair and equitable allocation of statutory penalties among the Michigan Class; and any other just and proper relief available under MCL 445.911.

99.    The Michigan Class also seeks punitive damages against Defendant because it carried out wrongful conduct with willful and conscious disregard of the rights of others. Defendant intentionally and willfully misrepresented the rights of

Plaintiffs and the Class members in order to enrich itself. Comerica's wrongful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## **PRAYER FOR RELIEF**

100.   WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully request that this Court enter an Order:

A.   Certifying the Class as defined above, appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

B.   Declaring that Defendant's actions, as set forth herein, constitute a breach of its contract with Plaintiffs and the putative Class, or alternatively, constitute common law and statutory conversion;

C.   Declaring that Defendant's actions breached its fiduciary duty to Plaintiffs and the Class;

D.   Awarding damages in the amount of Defendant's earnings during the relevant statutory period;

E.   Awarding treble damages with respect to Cause of Action IV;

F.   Awarding reasonable attorneys' fees, costs, and other litigation expenses;

G.   Awarding pre- and post-judgment interest, as allowable by law; and

H.   Such other relief the Court deems reasonable and just.

## **JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: March 7, 2025                   Respectfully submitted,

*/s/  E. Powell Miller*
E. Powell Miller (P39487)
Gregory A. Mitchell (P68723)

**THE MILLER LAW FIRM, P.C.**
850 W. University Drive, Suite 300
Rochester, MI 48307
248-841-2200
epm@millerlawpc.com
gam@millerlawpc.com

Frank S. Hedin
Paula S. Buzzi
Julie E. Holt
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
305-357-2107
fhedin@hedinllp.com
pbuzzi@hedinllp.com
jholt@hedinllp.com

*Counsel for Plaintiffs and the Putative Class*